IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**MERCHANTS BONDING COMPANY (MUTUAL)**
**and MERCHANTS NATIONAL BONDING, INC.**                              **PLAINTIFFS**

**V.**                          **CASE NO. 5:18-CV-05078**

**ARKANSAS CONSTRUCTION SOLUTIONS, LLC;**
**R.L. STOCKETT & ASSOCIATES, LLC;**
**RICK L. STOCKETT; and DIANA STOCKETT**                              **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

Now before the Court are a Motion to Dismiss (Doc. 28) and Brief in Support (Doc. 29) filed by Defendants R.L. Stockett & Associates, LLC, Rick L. Stockett, and Diana Stockett (collectively, "the Stockett Defendants"); a Response in Opposition (Doc. 31) filed by Merchants Bonding Company (Mutual) and Merchants National Bonding, Inc. (collectively, "Merchants"); a Reply filed by the Stockett Defendants (Doc. 34); and a Sur-Reply filed by Merchants (Doc. 38).

Counsel for the parties appeared in Court for a hearing on the Motion on November 6, 2018. At that time, the Stockett Defendants advanced two, alternative arguments in favor of dismissal. The first was brought under Federal Rule of Civil Procedure 12(b)(5) for failure to serve the Complaint in compliance with Rule 4(m). The second was brought pursuant to the *Colorado River* abstention doctrine, which, if applied to the facts of this case, would favor staying or dismissing the federal lawsuit due to parallel litigation in state court and the presence of certain "exceptional circumstances" warranting abstention. After hearing oral argument on these issues, the Court ruled in part from the bench, denying the Motion to Dismiss as to the Rule 12(b)(5) argument. As to the *Colorado River* abstention argument, the Court took the matter under advisement.

1

Now having considered the abstention argument more thoroughly, the Court finds it is unpersuaded that abstention is justified in this case and **DENIES** the Motion to Dismiss in all respects. Below, the Court will analyze both the Rule 12(b)(5) and abstention doctrine arguments in greater detail. To the extent the contents of this Order conflict with statements made from the bench, this Order will control.

## I. BACKGROUND

The instant lawsuit, filed on May 14, 2018, involves Merchants' request for declaratory and injunctive relief, as well as for damages for breach of contract and attorneys' fees, related to an Indemnity Agreement (Doc. 1-1) that all Defendants entered into with Merchants on May 3, 2016. According to the Complaint, separate Defendant Arkansas Construction Solutions, LLC ("ACS") was selected to be the contractor on a new home construction project in Northwest Arkansas, called the Sunrise Ridge Subdivision. ACS was required to obtain payment and performance bonds to insure its work on the project. To that end, it approached Merchants, which agreed to act as surety. However, before Merchants would formally issue the bonds to ACS, it needed certain assurances that ACS would fully indemnify Merchants against any and all losses that might be claimed against the bonds, as well as provide Merchants, upon demand, with collateral security "to cover any liability for any loss or expense for which [Merchants] may be obligated to indemnify the Company . . . ." (Doc. 1-1, p. 5).

Since it appears ACS lacked sufficient assets to fully indemnify Merchants on its own, the Stockett Defendants agreed to serve as indemnitors on the payment and

2

performance bonds.[1] The day after all Defendants signed the Indemnity Agreement, Merchants formally issued the payment and performance bonds on behalf of ACS as principal, and for the benefit of Sunrise Developers, Inc. ("Sunrise") as developer of the home construction project. See Doc. 29-1, p. 32. The full penalty sum of the payment bond was $500,000.00. Id.

In around March of 2017, close to a year after Merchant issued these bonds and after construction of the subdivision was well on its way, a subcontractor named Sagely Construction ("Sagely") made a claim against the bonds, complaining that ACS had not paid for certain goods and services that Sagely had provided on the project. Ultimately, Merchants settled this claim for $8,820.00. Then, another subcontractor called Del-Sha Construction, LLC ("Del-Sha") filed a lawsuit against ACS, Sunrise, and Merchants (as surety of the bonds) in Benton County Circuit Court on July 28, 2017, also asserting that Del-Sha had not been paid for its work on the same project.[2] Things rapidly went from bad to worse after that. On August 4, 2017, ACS filed a mechanics lien against Sunrise in the amount of $285,240.00. Then, on September 5, 2017, Sunrise filed a cross-claim (Doc. 29-3) against ACS and Merchants in the state court action, claiming that Sunrise

---

[1] Two other signatories to the Indemnity Agreement were Chris and Amy Sanford, whose relationship to ACS is unknown to the Court. The Sanfords were originally named as Defendants in this action, but Merchants moved to voluntarily dismiss them without prejudice on September 7, 2018, and the Court granted that motion the same day. See Doc. 22.

[2] The Court takes judicial notice of the complaint and other filings made in the state court action in Benton County, which appear in the record as attachments to Doc. 29. In taking notice of the state court matter, however, the Court does not assume as true the facts described in the pleadings in that case. Instead, the Court only observes the procedural history and claims that have been made to date in the state court matter.

3

was now owed $85,000.00 in damages, and demanding that ACS and Merchants jointly indemnify Sunrise for its monetary losses associated with the construction project.

On March 27, 2018, Sunrise's counsel sent a letter to Merchants (Doc. 1-2, pp. 16-20), making a formal, written claim on the payment bond in the full penalty amount of $500,000.00 and attaching a statement detailing the full extent of ACS's alleged failure to pay construction costs to a number of different companies. Shortly thereafter, on April 19, 2018, Merchants sent all parties to the Indemnity Agreement a written request to deposit collateral for the bonds and to fully indemnify Merchants for any and all costs and legal expenses it was currently incurring in the state court lawsuit, as per the terms of the Indemnity Agreement. When ACS and the Stockett Defendants failed to pay the collateral, Merchants filed the instant lawsuit in May of 2018, along with a Motion for Preliminary Injunction seeking specific performance of the Indemnity Agreement and an order directing Defendants to deposit the requested collateral with Merchants. A couple of months later, on August 22, 2018, separate Defendant Rick Stockett filed a cross-claim in the state court lawsuit against Merchants, asking the state court to declare the payment and performance bonds null and void. From what the Court can gather, it appears Mr. Stockett's argument in state court is that Merchants and Sunrise allegedly engaged in misconduct and/or collusion, which had the effect of nullifying the bonds.

With that procedural history now behind us, the Court now turns to the Motion to Dismiss. The Stockett Defendants first contend that they were served out of time, and the case should be dismissed on that basis alone. In the alternative, they maintain that good cause exists for the Court to exercise its discretion to abstain from ruling on the federal claims in favor of allowing the state court to rule on those same claims. With

respect to the late-service issue, Merchants admits that it did, in fact, serve the Stockett Defendants eighteen days late, but contends that it made reasonable and continuous efforts to effect timely service and only failed to do so because of excusable neglect. As to the more complex federal abstention argument, Merchants disagrees with the Stockett Defendants that the legal claims at issue in the case at bar are also at issue in the state court lawsuit. Merchants believes, instead, that the two cases are not parallel, and that the resolution of all issues in the state court forum will not necessarily resolve any of the pending issues here.

## II. LEGAL STANDARD

### A. Failure to Timely Serve under Rule 4(m)

Rule 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). However, the Rule also provides that "if the plaintiff shows good cause for the failure, the court *must* extend the time for service for an appropriate period." *Id.* (emphasis added). Such an extension of time should be granted if the court concludes there was either good cause or excusable neglect in a plaintiff's failure to timely serve. *See Kurka v. Iowa Cnty., Iowa*, 628 F.3d 953, 957 (8th Cir. 2010). In determining whether excusable neglect has been established, the Eighth Circuit examines the following four factors: "(1) the possibility of prejudice to the defendant, (2) the length of the delay and the potential impact on judicial proceedings, (3) the reason for the delay, including whether the delay was within the party's reasonable control, and (4) whether the party acted in good faith." *Id.* at 959.

## B. *Colorado River* Abstention Doctrine

The abstention doctrine at issue here was first discussed by the Supreme Court in the case of *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). The doctrine hinges on whether the plaintiff's causes of action and request for relief in the federal court action are also at issue and, thus, are likely to be resolved in a state court proceeding that is already under way. The federal court must consider two factors in the abstention analysis: (1) whether the state court and federal cases are "parallel" and (2) whether there exist "exceptional circumstances" to warrant the federal court abstaining on the issues. *See Fru-Con Const. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 534 (8th Cir. 2009).

If a parallel state-court action exists, the district court must then exercise its discretion to determine whether to abstain under *Colorado River*, while keeping in mind that "[a]llowing the litigation to proceed simultaneously in federal and state courts is wasteful because ultimately only one of the jurisdictions will actually decide the case." *Fru-Con*, 574 F.3d at 544 (internal quotation and citation omitted). Abstention is not a favored course of action, however, as federal courts "have a virtually unflagging obligation to exercise the jurisdiction given them, even when there is a pending state court action involving the same subject matter. Thus, a federal court may divest itself of jurisdiction by abstaining only when parallel state and federal actions exist and exceptional circumstances warrant abstention." *Id.* at 534 (citations omitted and cleaned up).

## III. DISCUSSION

### A. Dismissal Due to Untimely Service

Counsel for Merchants stipulated during the motion hearing that he did, in fact, serve the Complaint eighteen days past the deadline. The Stockett Defendants do not argue that they were prejudiced by the delay; rather, they argue only that Merchants failed to assert sufficient good cause for the delay, and the Complaint should be dismissed without prejudice on that basis.

During the hearing, the Court construed Merchants' response (Doc. 23) to the Clerk's Order to Show Cause and/or Merchants' response (Doc. 31) to the Motion to Dismiss as a request for the Court to retroactively extend the deadline for service by eighteen days. The Court granted that request from the bench, finding that: (1) the Stockett Defendants suffered no prejudice due to the delay in service, (2) the length of the delay was relatively short, (3) the delay did not negatively impact judicial proceedings in this case, (4) Merchants first attempted service on the Stockett Defendants approximately sixty days prior to the deadline, and (5) Merchants acted in good faith in attempting service multiple times prior to the deadline. Accordingly, for these reasons and the ones stated from the bench, the Stockett Defendants' request for dismissal under Rule 12(b)(5) is **DENIED**.

### B. *Colorado River* Abstention

Before the instant case was filed, a subcontractor filed a case in Benton County Circuit Court, demanding payment for work allegedly performed on the Sunrise Ridge Subdivision, and suing Sunrise as the developer on the project, ACS as the contractor, and Merchants as the guarantor of ACS's payment and performance bonds. The parties

agree that the defendants in the state court case ultimately filed various cross-claims against one another. It is also beyond dispute that the parties in the state court matter are substantially similar to the parties in the case at bar. That, however, is where the similarity ends, as the two cases do not concern the same causes of action, and there is no "substantial likelihood that the state proceeding will fully dispose of the claims presented in federal court." *Fru-Con*, 574 F.3d at 535 (explaining "parallel actions" under the *Colorado River* abstention doctrine).

The case at bar concerns the parties' rights and obligations under the Indemnity Agreement. Those issues have not been raised in the state court action, nor will Merchants have any particular obligation to raise them in that case in the future. Instead, the state court matter concerns the payment and performance bonds that Merchants issued to ACS for the benefit of Sunrise to guarantee ACS's work on the housing development project. Accordingly, the state court will likely adjudicate the following issues: (1) Del-Sha's (a subcontractor) contention that Sunrise and ACS are liable to it for work performed on the housing development project; (2) ACS's contention that Sunrise owes it money for services it performed in furtherance of the project; (3) Sunrise's contention that ACS must fully indemnify it for any and all monetary losses associated with the project; (4) Sunrise's contention that ACS is merely the alter-ego of several individuals, including the Stocketts; and (5) Rick Stockett's contention that the payment and performance bonds issued by Merchants became null and void at some point after they were issued.

By contrast, the case at bar has nothing to do with the execution of the payment and performance bonds. Count One of the instant Complaint is a demand by Merchants

that all Defendants be required, as per the terms of the Indemnity Agreement, to post collateral security for the penalty value of the payment and performance bonds, plus collateral sufficient to cover Merchants' costs incurred in defending itself in the state court litigation and in bringing the instant matter in federal court. Count Two is Merchants' request for declaratory judgment concerning the parties' rights under the Indemnity Agreement only. Count Three is Merchants' claim for breach of the Indemnity Agreement by virtue of Defendants' apparent refusal to fully indemnify Merchants thus far for liability connected with the payment and performance bonds, and for Defendants' apparent failure to pay to Merchants the collateral demanded under the terms of the Indemnity Agreement. Finally, Count Four is a claim for attorneys' fees and interest.

The Stockett Defendants argue in their Motion to Dismiss that the state and federal cases are parallel "because both involve a determination of the validity and enforceability of the Surety Bonds issued by Merchants." (Doc. 29, p. 9). The Court disagrees. The state court is currently being asked to adjudicate the parties' rights under the payment and performance bonds and determine who should be paid and in what amounts. These claims are not at issue in the federal lawsuit. The Stockett Defendants also contend that the "preliminary issue of whether the construction contract was breached by SD [Sunrise] or by ACS . . . must be decided first" by this Court, *id.* at 10. Their thinking on this point, apparently, is that if ACS is eventually absolved of all liability in state court on the bond issues, then any action by this Court to require the Stockett Defendants to pony up collateral to secure the bonds will end up being a waste of time. Certainly, the Stockett Defendants prefer not to indemnify Merchants and not to post any collateral. They would much rather wait and see how the state court action plays out, and then, perhaps a year

or more from now, after all obligations under the payment and performance bonds have been fully resolved, permit Merchants to then proceed with their federal claims under the Indemnity Agreement. But surely this "wait-and-see" strategy was not contemplated by the parties when they signed the Indemnity Agreement.

Contrary to the Stockett Defendants' position, the Court believes that deciding Merchants' claims in the instant lawsuit will not require the Court to decide "the preliminary issue of whether the construction contract was breached by SD [Sunrise Developers] or by ACS." (Doc. 29, p. 10). It is *the state court* that is tasked with resolving the parties' claims under the payment and performance bonds, not the federal court. It is therefore also the state court's task to determine the validity and enforceability of those bonds, if called upon to do so. Accordingly, if any party to this action requests that this Court make rulings concerning the validity, enforceability, or obligations owed under the payment and performance bonds, *the Court will abstain from doing so* in favor of allowing the state court to rule on those issues. Further, if the state court eventually determines that the bonds are null and void (as Mr. Stockett contends), such a decision will not adversely affect the rulings made by this Court with respect to the Indemnity Agreement or otherwise result in a net waste of judicial resources.

Because the Court finds that the state and federal lawsuits are not parallel, it need not reach the second step in the *Colorado River* abstention analysis, which asks whether, in the Court's discretion, exceptional circumstances may nonetheless exist to warrant abstention. Assuming for the sake of argument that the state and federal actions are, indeed, parallel, the Court finds that no exceptional circumstances exist to warrant abstention here.

The following six factors are useful in guiding the Court's analysis of "exceptional circumstances":

> (1) whether there is a *res* over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority—not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights.

*Federated Rural Elec. Ins. Corp. v. Ark. Elec. Coop., Inc.*, 48 F.3d 294, 297 (8th Cir. 1995).

In the instant case, the parties agree that factors one and two are neutral and that factor five weighs in favor of abstention. Factor four, however, weighs against abstention. While the state court case was filed over a year prior to the federal action, there has been no claim made in that case relating to Merchants' rights under the Indemnity Agreement. Instead, the only case in which the parties' rights and obligations under the Indemnity Agreement are at issue is the federal case. The state court case therefore receives no priority over the federal case in the analysis.

As to factor three, the Court finds that maintaining separate actions will not result in piecemeal litigation, as the bonds and the Indemnity Agreement are separate contracts with separate obligations. Though there appear to be no cases within this Circuit addressing the distinction between indemnity agreements and performance bonds, there are certainly helpful cases from other jurisdictions that explain the relevant distinctions. For example, in *Atlantic Mutual Insurance Co. v. Kilearn, Inc.*, the Northern District of Georgia found that a state court action involved "the underlying construction contracts, [but] not the Indemnity Agreement." 2007 WL 2422041, at * 4 (N.D. Ga. Aug. 21, 2007).

11

The court then reasoned that since the indemnity agreement and the underlying construction contracts did not address the same subject matter, bind the same parties, or raise the same claims, "the indemnity issues [were] separate and distinct, requiring only a determination of: (1) the costs and expenses that plaintiff incurred as a result of issuing the performance and surety bonds; and (2) whether those costs and expenses resulted from plaintiff's 'deliberate and willful malfeasance.'" *Id.* As a result of this analysis, the court declined to abstain under the *Colorado River* doctrine.

Similarly, in *Indiana Lumbermens Mutual Insurance Co. v. Wild*, the plaintiff in federal court sought enforcement of an indemnity agreement under a surety bond for an asbestos removal project for the Chicago Board of Education. 1994 WL 411743, at *1 (N.D. Ill. Aug. 4, 1994). The district court for the Northern District of Illinois found that a right to indemnification arises immediately, regardless of any obligations owed on the performance bond. In the end, the court did not favor abstention because the state court claims that were proceeding at the same time could be determined by reference to the performance bond, whereas the federal claims could be determined by reference to the indemnity contract. *Id.* at *2. The same analysis applies in the case at bar, and factor three therefore weighs against abstention.

Lastly, as to factor six, the state forum is plainly inadequate to protect Merchants' rights under the Indemnity Agreement. The not-so-subtle request the Stockett Defendants make in their Motion is for the Court to simply ignore the existence of the Indemnity Agreement for the time being and put the matter of their obligations under that contract on hold. Doing so would mean, of course, that the Stockett Defendants would not be required to specifically perform under the contract and pay Merchants, potentially,

hundreds of thousands of dollars of collateral to secure the payment and performance bonds while litigation concerning those bonds rages on in state court. The Court finds that no exceptional circumstances exist to justify the extraordinary act of abstention under the *Colorado River* doctrine in this case, and for the reasons explained above, the Stockett Defendants' request for dismissal or stay under this doctrine is **DENIED**.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that the Motion to Dismiss (Doc. 28) filed by Defendants R.L. Stockett & Associates, LLC, Rick L. Stockett, and Diana Stockett is **DENIED**.

**IT IS SO ORDERED** on this 26th day of November, 2018.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

13