IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MERCHANTS BONDING COMPANY (MUTUAL)
and MERCHANTS NATIONAL BONDING, INC.                                PLAINTIFFS

V.                           CASE NO. 5:18-CV-05078

ARKANSAS CONSTRUCTION SOLUTIONS, LLC;
R.L. STOCKETT & ASSOCIATES, LLC;
RICK L. STOCKETT; and DIANA STOCKETT                                DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Now before the Court is a motion for preliminary injunction, styled "Application for Injunctive Relief" (Doc. 3), filed by Merchants Bonding Company (Mutual) and Merchants National Bonding, Inc. (collectively, "Merchants"). Defendants R.L. Stockett & Associates, LLC, Rick L. Stockett, and Diana Stockett (collectively, "the Stockett Defendants") filed a Response in Opposition to the motion (Doc. 44), and Merchants filed a Reply (Doc. 47).[1] The motion is **GRANTED**.[2]

---

[1] Separate Defendant Arkansas Construction Solutions, LLC ("ACS"), responded to the Application for Injunctive Relief to the extent that it generally denied that Merchants was entitled to the relief it requested, and it requested extra time to submit to and complete discovery before submitting a full response. (Doc. 25). ACS's response was filed on September 11, 2018, and it filed no further responses. Further, ACS's counsel represented at a hearing on November 6, 2018, that ACS was insolvent. The substantive arguments discussed in the following Order were raised only by the Stockett Defendants, and not ACS, although by the terms of the Indemnity Agreement at issue here, ACS and the Stockett Defendants appear to be jointly liable for damages resulting from any alleged breach of contract.

[2] The Court had reserved February 14, 2019, as a hearing date for the motion. However, after reviewing the parties' briefing, the Court determined that no constructive purpose would be served in holding a hearing because there are no material factual controversies at issue. *See United Healthcare Inc. Co. v. AdvancePCS*, 316 F.3d 737, 744 (8th Cir. 2002) ("An evidentiary hearing is required prior to issuing a preliminary injunction only when a material factual controversy exists."). Accordingly, the Stockett Defendants' Motion to Continue Hearing (Doc. 48) is **MOOT**.

# I. BACKGROUND

The parties do not dispute the following background facts. Merchants filed the instant case, requesting declaratory and injunctive relief and damages for breach of contract, on May 14, 2018. All Defendants entered into an Indemnity Agreement (Doc. 1-1) with Merchants to cover losses associated with certain payment and performance bonds that Merchants issued on behalf of ACS in connection with the Sunrise Ridge Subdivision construction project. ACS had been selected as the contractor on the construction project, and the developer, Sunrise Developers, Inc. ("Sunrise"), required ACS to obtain payment and performance bonds to insure its work. ACS approached Merchants for the bonds. In exchange, Merchants required ACS to fully indemnify Merchants against any and all losses that might be claimed against the bonds, as well as provide Merchants, upon demand, with collateral security "to cover any liability for any loss or expense for which [Merchants] may be obligated to indemnify the Company . . . ." (Doc. 1-1, p. 5). The Stockett Defendants agreed to serve as indemnitors on the payment and performance bonds.

The day after all Defendants signed the Indemnity Agreement, Merchants formally issued the payment and performance bonds on behalf of ACS as principal, and for the benefit of Sunrise as developer. *See* Doc. 29-1, p. 32. At some point, problems arose on the construction site of the Sunrise Ridge Subdivision, and some subcontractors began making claims against ACS and Sunrise for payment. One of those subcontractors, Del-Sha Construction, LLC, ("Del-Sha") filed a lawsuit against ACS, Sunrise, and Merchants in Benton County, Arkansas Circuit Court, Case Number 04CV-17-1370, requesting payment under the Merchants payment bond for work Del-Sha performed on

the Sunrise Ridge subdivision. *See* Doc. 29-1. Then ACS filed a mechanics lien against Sunrise, and Sunrise filed a cross-claim against ACS and Merchants.

In an earlier Order issued in the case at bar (Doc. 42), this Court found that the federal case before it (concerning the Indemnity Agreement) and the *Del-Sha* case currently being litigated in state court (concerning the amounts disputed and allegedly owed under the payment and performance bonds), are not parallel, and this Court was therefore not required to abstain from ruling on the issues before it. The Court explained its reasoning as follows:

> The state court is currently being asked to adjudicate the parties' rights under the payment and performance bonds and determine who should be paid and in what amounts. These claims are not at issue in the federal lawsuit. The Stockett Defendants also contend that the "preliminary issue of whether the construction contract was breached by SD [Sunrise] or by ACS . . . must be decided first" by this Court, [Doc. 29] at 10. Their thinking on this point, apparently, is that if ACS is eventually absolved of all liability in state court on the bond issues, then any action by this Court to require the Stockett Defendants to pony up collateral to secure the bonds will end up being a waste of time. Certainly, the Stockett Defendants prefer not to indemnify Merchants and not to post any collateral. They would much rather wait and see how the state court action plays out, and then, perhaps a year or more from now, after all obligations under the payment and performance bonds have been fully resolved, permit Merchants to then proceed with their federal claims under the Indemnity Agreement. But surely this "wait-and-see" strategy was not contemplated by the parties when they signed the Indemnity Agreement.
>
> Contrary to the Stockett Defendants' position, the Court believes that deciding Merchants' claims in the instant lawsuit will not require the Court to decide "the preliminary issue of whether the construction contract was breached by SD [Sunrise Developers] or by ACS." (Doc. 29, p. 10). It is *the state court* that is tasked with resolving the parties' claims under the payment and performance bonds, not the federal court. It is therefore also the state court's task to determine the validity and enforceability of those bonds, if called upon to do so. Accordingly, if any party to this action requests that this Court make rulings concerning the validity, enforceability, or obligations owed under the payment and performance bonds, *the Court will abstain from doing so* in favor of allowing the state court to rule on those issues. Further, if the state court eventually determines that the bonds are

null and void (as Mr. Stockett contends), such a decision will not adversely affect the rulings made by this Court with respect to the Indemnity Agreement or otherwise result in a net waste of judicial resources.

(Doc. 42, pp. 9-10)

The issue that is now ripe for decision is whether Merchants is entitled to a preliminary injunction that would require the Stockett Defendants to provide collateral to Merchants in the sum of $700,000. Although the full penalty sum of the payment bond at issue is only $500,000, it appears Merchants is demanding $700,000 in collateral because it estimates that its total current outstanding exposure under the bonds, including its projected attorney's fees, is $200,000 in excess of the full penalty sum of the bonds.

There are four factors that a court must consider, generally, in ruling on a motion for preliminary injunction. The Stockett Defendants contend that none of the four factors weighs in favor of issuing the preliminary injunction. Below, the Court will explain the four factors and consider whether they do, indeed, weigh in favor of granting preliminary injunctive relief.

## II. LEGAL STANDARD

It is well established that "a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citing 11A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2948, pp. 129-130 (2d ed. 1995)) (emphasis in original).

Although the factors to be considered when deciding whether this burden has been met are similar nationwide, district courts in the Eighth Circuit should consider: (1) the threat of irreparable harm to the movant in the absence of injunctive relief; (2) the

movant's likelihood of success on the merits; (3) the balance between this harm and the injury that granting the injunction will inflict on the other party; and (4) whether the injunction is in the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). While no single factor is determinative, *id.*, the Eighth Circuit has made clear that in weighing whether to grant a preliminary injunction, the "likelihood of success on the merits is most significant." *Minn. Ass'n of Nurse Anesthetists v. Unity Hosp.*, 59 F.3d 80, 83 (8th Cir. 1995) (quoting *S & M Constructors, Inc. v. Foley Co.*, 959 F.2d 97, 98 (8th Cir. 1992)). Despite the importance of the likelihood of success on the merits, the inquiry should focus on "whether the balance of the equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase*, 640 F.2d at 113.

### III. DISCUSSION

#### A. Threat of Irreparable Harm

The Court begins its discussion of the *Dataphase* factors by considering whether Merchants would face a threat of irreparable harm if the Court refused to grant a preliminary injunction. The Court takes up this argument first because it is the one that is the most hotly contested by the parties, and it can be resolved by the Court as a matter of law, without reference to any evidence or disputes of fact. First, the Stockett Defendants contend that Merchants' demand for preliminary injunctive relief is for the payment of collateral, which is a demand that is solely monetary in nature. They argue that since the demand is for monetary relief, there is an adequate remedy at law available to Merchants, and a preliminary injunction—which is ordinarily available only for equitable relief—would not be warranted. Second, the Stockett Defendants maintain that

5

Merchants delayed in seeking relief from this Court, which tends to undercut Merchants' argument that it will suffer irreparable harm unless it obtains preliminary relief.

The Court agrees with the Stockett Defendants that, in the ordinary case, a party's ability to be fully compensated through an award of damages means that its harm is neither "irreparable" nor equitable in nature. *See Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003) ("When there is an adequate remedy at law, a preliminary injunction is not appropriate."). But here, the Court is persuaded that even if Merchants were to fully recover its monetary damages at the end of the litigation, it still would not be made whole for the Stockett Defendants' breach of the collateral security provision of the Indemnity Agreement. The issue is not simply one of monetary loss: it is about the right of a surety to the immediate, contracted-for payment of collateral to eliminate the surety's *potential exposure* for a risk of loss.

The risk of loss to a surety who is a party to an indemnity agreement—as opposed to some other kind of agreement—is unique. This is because the indemnitor specifically promises to indemnify the surety from any future loss, even temporary loss, associated with a bond, through the payment of collateral upon demand. It follows that it would not make Merchants whole to order Defendants to pay a money judgment at the end of this litigation. This is because, at that point, Merchants would have lost its contractual right to the immediate payment of collateral—which is a form of specific relief that only a preliminary injunction can provide. Without such relief, Merchants would simply be required "to suffer any loss, even if only temporary, associated with the performance of a primary obligor's duty." *Travelers Cas. and Sur. Co. v. Ockerlund*, 2004 WL 1794915, at *6 (N.D. Ill. Aug. 6, 2004). Further, the Court is persuaded by the notion that "even if a
6

surety's loss is monetary and only temporary, *that it must assume a primary obligor's obligation at all* is a harm for which there is no adequate remedy at law." *Id.* at *5 (emphasis added) (citing Restatement (Third) of Suretyship and Guaranty § 21 cmts. i, j, k (1996)).

The Restatement of Suretyship and Guaranty explains that a surety's "right of exoneration" is an equitable remedy for the breach of an indemnity agreement:

> When the principal obligor is charged with notice of the secondary obligation, the principal obligor owes the secondary obligor a duty to perform the underlying obligation at the time the performance is due. While, if the principal obligor breaches this duty and the secondary obligor is called on to perform the secondary obligation, the principal obligor will have the duty to reimburse the secondary obligor, *it is inequitable for the secondary obligor to be compelled to suffer the inconvenience and temporary loss that performance of the secondary obligation will entail*. Thus, if the principal obligor has no defense to its duty of performance, the secondary obligor is entitled to appropriate relief protecting its interests. The right to such relief is sometimes called the right of exoneration.

Restatement (Third) of Suretyship and Guaranty § 21 cmt. i (1996) (emphasis added).

Unfortunately, there do not appear to be any Eighth Circuit cases that discuss whether a surety's separate, equitable right of exoneration could justify the granting of preliminary injunctive relief in a breach of indemnity/specific performance case. The Court has therefore surveyed a number of district court cases from around the country that have dealt thoughtfully with the issue. After doing so, the Court concludes that the Stockett Defendants greatly minimize the harm to Merchants when they argue that the purpose of a collateral security clause is only "to provide sureties with access to financial cushioning during the pendency of claims," such that any loss resulting from the failure to pay over collateral "is monetary in character and may be adequately remedied by a judgment on the merits." (Doc. 44, p. 7).

In the Court's view, there are more district courts that come down squarely on the side of granting preliminary injunctive relief in indemnity agreement cases. With that said, however, there are certainly courts that come down on the other side. Since none of these opinions is binding on this Court, and in the absence of clear guidance from the Eighth Circuit, the appropriate thing to do is consider which set of arguments and reasoning is most reasonable and in keeping with principles of equity and justice.

Below is a list of some of the district court cases the Court surveyed, all of which issued preliminary injunctions after determining that the sureties were in danger of suffering immediate, irreparable harm if they failed to receive collateral security upon demand. The Court finds the reasoning in each of these cases to be persuasive. *See Int'l Fid. Ins. Co. v. Talbot Constr. Inc.*, 2016 WL 8814367, at *7 (N.D. Ga. Apr. 13, 2016) ("Damages available after trial and judgment, even if including costs and interest, are of little use to Fidelity when it is responsible for investigating, defending, and paying claims on bonds in the present—claims arising due to Talbot's alleged failure to fulfill its obligations. Protection against this risk to Fidelity is precisely what the collateral security provision was meant to secure, and no amount of *future* damages provides an adequate remedy to harm resulting from *present* exposure."); *U.S. Sur. Co. v. Stevens Family Ltd. P'ship*, 905 F. Supp. 2d 854, 859 (N.D. Ill. 2012) (finding that breaching a collateral security provision "cannot be rectified through the traditional legal remedy of monetary reimbursement [because] a surety will not have suffered an actual loss at the point where collateralization, as opposed to reimbursement, is appropriate"); *Travelers Cas. & Sur. Co. of Am. v. Indus. Commercial Structures, Inc.*, 2012 WL 4792906, at *3 (M.D. Fla. Oct. 9, 2012) ("[T]he nature of the injury in collateral security provision cases is the lack of

collateralization while claims are pending, and nothing can remedy that injury after the fact."); *Int'l Fidelity Ins. Co. v. Sols. to Every Problem, Inc.*, 2012 WL 2576775, at *7 (E.D. Tenn. July 3, 2012) (persuaded by the argument "that the bargained-for objectives of the collateral security provision . . . would not be achieved without an injunction"); *Hanover Ins. Co. v. Holley Constr. Co. & Assocs.*, 2012 WL 398135, at *6 (M.D. Ga. Feb. 7, 2012) ("[A]lthough damages might be available to the surety in the future, the surety bargained for a collateral security clause to protect it from the impending risks of liability once a claim had been made on the bond, and the availability of damages after trial would not protect a surety from a present risk of exposure." (internal quotation marks and citation omitted)); *Int'l Fid. Ins. Co. v. Waterfront Grp. NC, LLC*, 2011 WL 4715155, at *4 (W.D.N.C. 2011) (recognizing "a surety's loss of its right to collateralization cannot be adequately remedied through monetary damages"); *Developers Sur. & Indem. Co. v. Elec. Serv. & Repair, Inc.*, 2009 WL 3831437, at *2 (S.D. Fla. Nov. 16, 2009) (opining that if the court failed to grant a preliminary injunction, the surety's "rights to contractual and common law exoneration and *quia timet* will be irreparably and forever lost, despite the parties' clear and distinct contractual agreement that such rights should be afforded every legal protection"); *Int'l Fid. Ins. Co. v. Anchor Envtl., Inc.*, 2008 WL 1931004, at *7 (E.D. Pa. May 1, 2008) ("If [the surety] is deprived of the bargained-for collateral security, it will face the risk of being a general unsecured creditor of Defendants and of not being able to collect.").

This Court therefore finds it likely that Merchants will suffer irreparable harm if a preliminary injunction does not issue in this case, due to Merchants' inability to otherwise be indemnified for claims and losses asserted against the underlying bonds. The Stockett

9

Defendants do not dispute they entered into the Indemnity Agreement, and they do not argue that its terms are ambiguous. The Court is aware that claims for hundreds of thousands of dollars in damages have already been made against the underlying bonds. Unless Merchants now collects the collateral promised by the Stockett Defendants pursuant to the terms of the Indemnity Agreement, Merchants will forever lose the valuable benefit it contracted for: to be fully indemnified upon the filing of claims against the bonds.

The Stockett Defendants urge the Court to find that there is no threat of irreparable harm here because Merchants is capable of footing the legal bills for the contested bond claims and for defending itself in state court until such time as those claims are fully resolved. But the very nature of an indemnity agreement is that it enables a surety to contract for collateral security *upon demand*—not at a time of the indemnitor's choosing.

The Court is unpersuaded by the contrary district court authority cited by the Stockett Defendants in their brief. The two cases they most heavily rely upon are *Firemen's Ins. Co. of Newark, New Jersey v. Keating*, 753 F. Supp. 1146, 1153 (S.D.N.Y.1990); and *Allied World Specialty Insurance Co. v. Abat Lerew Construction, LLC,* 2017 WL 1476131, at *5 (D. Neb. Apr. 24, 2017). Both courts in these cases concluded that preliminary injunctive relief was not justified because money judgments could make the sureties whole at the conclusion of litigation. The *Allied World* court did acknowledge that "[t]he purpose of a collateral security clause is to provide sureties with access to financial cushioning during the pendency of claims"; yet, the court was persuaded that a breach in that clause could, in the end, be "adequately remedied by a

judgment on the merits." 2017 WL 1476131, at *4. Similarly, the *Keating* court in its opinion downplayed the potential damage a surety would face in such a breach, :

> The fact that plaintiff may, in the interim, be marginally less secure with respect to the availability of a final money judgment, does not constitute "irreparable harm" so as to merit the extraordinary remedy of a preliminary injunction.

753 F. Supp. at 1157.

Having carefully considered the *Allied World* and *Keating* cases (as well as a few others with similar holdings), this Court concludes that when *the entire purpose* of a contract is to provide security to a surety in the event of a third party's claim for damages, that lack of security cannot be adequately remedied by a money judgment months or years down the road. The bargained-for right to be exonerated for losses during the pendency of the claim becomes utterly lost.

As for the Stockett Defendants' final argument on the subject of unnecessary delay, they believe that Merchants waited too long to seek injunctive relief, and this fact should weigh against a finding of irreparable harm. Merchants responds that, although a subcontractor made a claim against the bonds as far back as June of 2016, the parties resolved that claim amicably. Sunrise made its $500,000 claim against the bonds much later, on March 27, 2018. (Doc. 1-2, pp. 16-20). And a short time after that, on April 9, 2018, Merchants demanded the deposit of collateral. *Id.* at 2-4. On April 29, 2018, Sunrise filed a cross-claim in the state court action that named Merchants and alleged Merchants' liability under the bonds. Merchants then filed the instant lawsuit on May 14, 2018. In considering that timeline, the Court does not find that Merchants delayed unnecessarily in making its demands for relief against Defendants. For all these reasons,

the Court is persuaded that Merchants has met its burden of establishing a threat of irreparable harm.

## B. Likelihood of Success on the Merits

The Stockett Defendants contend that since Mr. Stockett, through a cross-claim filed in the state court action, is contesting the validity of the bonds, it is unlikely that the Indemnity Agreement (which assumes the validity of those bonds) will be deemed valid. Mr. Stockett alleges the bonds are invalid because: (1) he was told by Merchants' agent that such bonds are "rarely enforced"; (2) he, at some point, decided that he no longer wanted to be liable on the bonds and sought to unilaterally cancel them by not paying the monthly premiums; (3) he was told by Merchants' agent "that if the premium was unpaid the Bonds would cease to exist"; and (4) he thought it sufficient to avoid his obligation under the bonds by telling a Merchants agent "that neither he nor his family or company would assume any financial responsibility for the Bonds . . . ." (Doc. 44, p. 9).

The Court has abstained from ruling on the validity of the underlying bonds in favor of allowing the state court to do so. But if the Court were to assess Merchants' likelihood of success of proving that the Indemnity Agreement is valid and enforceable—based on the strength of the above arguments concerning the bonds, and assuming that all the facts supporting these arguments are true—it is unlikely that the underlying bonds will be deemed invalid and unlikely that the Indemnity Agreement will be deemed unenforceable. What is clear is that the Stockett Defendants promised to post collateral upon demand, and demand has now been made. The Restatement (Third) of Suretyship and Guaranty at Section 21, comment "i," explains that "it is inequitable for the secondary obligor"—in this case, Merchants—"to be compelled to suffer the inconvenience and temporary loss

that performance of the secondary obligation will entail. Thus, if the principal obligor"—in this case, ACS/the Stockett Defendants—"has no defense to its duty of performance, the secondary obligor is entitled to appropriate relief protecting its interests."

In the case at bar, the Stockett Defendants have no defense to their duty of performance under the Indemnity Agreement other than their contention that the bonds are null and void, or otherwise invalid. The likelihood that Merchants will succeed on their claims in *this case* for breach of the Indemnity Agreement is high, and this factor weighs in favor of requiring the Stockett Defendants to post collateral now, lest Merchants lose forever its right of exoneration.

### C. Balance of Injuries

As the Court observed in an Order previously issued in this case:

> Certainly, the Stockett Defendants prefer not to indemnify Merchants and not to post any collateral. They would much rather wait and see how the state court action plays out, and then, perhaps a year or more from now, after all obligations under the payment and performance bonds have been fully resolved, permit Merchants to then proceed with their federal claims under the Indemnity Agreement. But surely this "wait-and-see" strategy was not contemplated by the parties when they signed the Indemnity Agreement.

(Doc. 42, pp. 9-10). If no preliminary injunction issues here, then Merchants will shoulder 100% of the burden of having entered into the Indemnity Agreement with the Stockett Defendants, despite the fact that the Stockett Defendants have offered no defense to their obligation to comply with that Agreement—other than to contest the validity of the underlying bonds in a series of arguments that the Court doubts are likely to succeed on the merits in state court.

It is undisputed that multiple claims have been made on the bonds. It is undisputed that the Indemnity Agreement contains clear and unambiguous language. It is undisputed

that Defendants have offered no compelling argument that the Indemnity Agreement is unenforceable. What is happening here is that the Stockett Defendants would like to have their cake and eat it, too. While they acknowledge having promised to pay collateral to indemnify Merchants in the event that claims were made against the bonds, they argue that Merchants should bear the legal and financial burdens of the litigation surrounding those claims, at least for the foreseeable future, without any real justification. For these reasons, the balance of the injuries weighs in favor of issuing the preliminary injunction.

### D. Public Interest

Finally, the Court finds that there is a compelling public interest in supporting the enforcement of clear and unambiguous terms of indemnity agreements between sophisticated parties. So, too, there is value in instilling confidence in the surety industry that indemnity agreements will be enforced by the courts, and that the contracted-for right of exoneration will be recognized as an equitable right subject to protection through preliminary injunctive means. Finally, the Court believes that if *Allied World*, 2017 WL 1476131, at *4, and *Keating*, 753 F. Supp. at 1157, were recognized as the "law of the land" on preliminary injunctive relief, it is likely that, over time, sureties would become reluctant to enter into such contracts at all, and those who entered into contracts with sureties might eventually become emboldened to refuse to post collateral in favor of challenging the demands in court—and waiting out the typically slow grind of the litigation process.

### E. Amount to Be Awarded Under Preliminary Injunction

Now that the Court has determined that a preliminary injunction should issue, the amount of relief to be awarded must be considered. The parties' Indemnity Agreement

provides that Defendants

> shall unconditionally indemnify and keep indemnified the [surety] against any and all liability, loss and expense of whatsoever kind or nature, including, but not limited to, court costs, attorneys' fees, and interest, which the [surety] may sustain or incur (1) by reason of having executed or procured execution of an Bond or Bonds, (2) by reason of the failure of the [Defendants] to perform or comply with this Agreement, or (3) to enforce any of the covenants and conditions of this Agreement.

(Doc. 1-1, p. 3).

The terms above indicate that if Merchants succeeds on the merits in this case, it will be entitled to indemnification against all liability and loss associated with the underlying payment and performance bonds, including any court costs, attorneys' fees, and interest incurred. The amount of collateral security that is to be paid by Defendants upon Merchants' demand is specified in the Agreement to be an amount

> equal to (1) the liability of the [surety], if established; (2) the liability asserted against the [surety]; or (3) the reserve established by the [surety], or any increase thereof, to cover any liability for any loss or expense for which the [Defendants] may be obligated to indemnify the [surety] under the terms of this Agreement."

*Id.* at 5. (Doc. 1-1, p. 5).

Here, Merchants has demanded $700,000 from the Stockett Defendants, an amount equal to the liability asserted against Merchants ($500,000, or the full payment value of the bonds), plus an estimated $200,000 in attorney's fees and costs. Merchants has provided no substantiation for its attorney fee estimate. Although it stands to reason Merchants has been incurring fees and will continue to do so in defending itself in the state court litigation, as well as in prosecuting the instant action, the Court is not convinced that $200,000 is a fair and adequate estimate of those fees, at least at this time. Without any plausible justification for the $200,000 fee estimate, the Court cannot award such an

amount as part of preliminary injunctive relief.

The Court will issue a preliminary injunction that will require Defendants to provide collateral to Merchants in the amount of $500,000, with the understanding that if Merchants prevails upon final disposition of this matter, it will be entitled to an additional payment of its reasonable fees, costs, and expenses incurred in litigating the underlying bond claims and the instant lawsuit.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that the Application for Injunctive Relief (Doc. 3) filed by Merchants Bonding Company (Mutual) and Merchants National Bonding, Inc. is **GRANTED**, and Arkansas Construction Solutions, LLC, R.L. Stockett & Associates, LLC, Rick L. Stockett, and Diana Stockett are collectively **ORDERED** to provide collateral to Merchants in the sum of **$500,000**.

**IT IS FURTHER ORDERED** that the Stockett Defendants' Motion to Continue Hearing (Doc. 48) is **MOOT**.

**IT IS SO ORDERED** on this 5th day of February, 2019.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE